O

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

EASTERN DIVISION

DEBRA TATE,                    ) Case No. ED CV 14-01248-DFM
                              )
              Plaintiff,       ) MEMORANDUM OPINION AND
                              ) ORDER
        v.                    )
                              )
CAROLYN W. COLVIN, Acting     )
Commissioner of Social Security, )
                              )
              Defendant.       )
                              )

Plaintiff Debra Tate appeals from the final decision of the Administrative Law Judge ("ALJ") denying her applications for Social Security disability benefits. Because the ALJ's decision was supported by substantial evidence in the record, the Commissioner's decision is affirmed and the matter is dismissed with prejudice.

## I.

## PROCEDURAL BACKGROUND

In May 2006, Plaintiff filed applications for Social Security disability insurance benefits ("DIB") and supplemental security income ("SSI").

Administrative Record ("AR") 265-76. She alleged disability beginning May 1, 2001, because of "[p]ost traumatic stress syndrome," "nerve damage," and "rsd," or Reflex Sympathetic Dystrophy. AR 265, 294. After Plaintiff's application for DIB was denied, she requested a hearing before an ALJ. AR 112-16, 120-24, 125-26. An initial hearing on February 29, 2012 was continued to allow submission of additional evidence. See AR 40. On May 29, 2012, Plaintiff and two medical experts testified at a second hearing. AR 43-83. On November 19, 2012, Plaintiff and a vocational expert ("VE") testified at a third hearing. AR 84-107.[1]

On November 29, 2012, the ALJ issued a written decision denying Plaintiff's request for DIB. AR 11-28. He found that Plaintiff had the severe impairments of "cervical strain," "lumbosacral sprain," and "multiple aches and pain" but retained the residual functional capacity ("RFC") to perform light work with additional limitations. AR 14, 20. The ALJ found that anxiety was not a severe impairment. AR 14; see AR 14-19. Based on the VE's testimony, the ALJ found that Plaintiff could perform her past relevant work as a postal carrier and therefore was not disabled. AR 27-28.

## II.

## ISSUES PRESENTED

The parties dispute whether the ALJ erred in: (1) determining the severity of Plaintiff's mental impairment during the period from May 2001 through February 2003 and (2) developing the record with respect to the

------

[1] The lengthy period between Plaintiff's applications and the hearings on her DIB claim appears attributable to problems with her receipt of mail, see AR 117-19, 325, and delays in the agency's response to her untimely request for reconsideration, see AR 37, 120-24. Although Plaintiff also applied for SSI, her application was denied because her income exceeded the earnings limit. See AR 108.

March 6, 2003 opinion of treating psychiatrist Diane DeSilva.[2] Joint
Stipulation ("JS") at 3.

## III.

## STANDARD OF REVIEW

Under 42 U.S.C. § 405(g), a district court may review the
Commissioner's decision to deny benefits. The ALJ's findings and decision
should be upheld if they are free from legal error and are supported by
substantial evidence based on the record as a whole. 42 U.S.C. § 405(g);
Richardson v. Perales, 402 U.S. 389, 401 (1971); Parra v. Astrue, 481 F.3d
742, 746 (9th Cir. 2007). Substantial evidence means such relevant evidence as
a reasonable person might accept as adequate to support a conclusion.
Richardson, 402 U.S. at 401; Lingenfelter v. Astrue, 504 F.3d 1028, 1035 (9th
Cir. 2007). It is more than a scintilla, but less than a preponderance.
Lingenfelter, 504 F.3d at 1035 (citing Robbins v. Soc. Sec. Admin., 466 F.3d
880, 882 (9th Cir. 2006)). To determine whether substantial evidence supports
a finding, the reviewing court "must review the administrative record as a
whole, weighing both the evidence that supports and the evidence that detracts
from the Commissioner's conclusion." Reddick v. Chater, 157 F.3d 715, 720
(9th Cir. 1996). "If the evidence can reasonably support either affirming or
reversing," the reviewing court "may not substitute its judgment" for that of
the Commissioner. Id. at 720-21.

///

///

---

[2] Although the ALJ referred to psychiatrist Paul DeSilva, it appears that
Plaintiff was treated by Diane DeSilva. Reports from Forensic Psychiatric
Services Medical Group bear the name "Paul DeSilva" on its letterhead, but
attached declarations are signed by psychiatrist "C. Diane DeSilva." See, e.g.,
330, 337, 476, 485; see also AR 615, 666.

**IV.**

**DISCUSSION**

**A.** **Any Error in Assessing the Severity of Plaintiff's Mental Impairment Between May 2001 and February 2003 Was Harmless**

**1.** **Relevant Background**

In February 2000, while Plaintiff was working as a postal carrier, a bomb exploded in a mailbox near her, causing her physical and mental injuries. See AR 49, 392-93, 412. She continued working for the postal service in a limited capacity through 2002, while receiving treatment for her injuries through workers' compensation. See AR 394, 412, 535-41. She began receiving mental-health treatment several months after the explosion and continued to do so at the time of the hearings. See AR 547-48 (in July 2001, treating physician Larry Ding noting Plaintiff's medication for PTSD, anxiety, and depression); 609-10 (in January 2012, psychologist Marie Alkire noting that she began treating Plaintiff in October 2001 and continued to do so).

In mid-2002, Plaintiff began seeing Dr. DeSilva. See AR 715. On March 6, 2003, Dr. DeSilva completed a Secondary Treating Physician's Final Psychiatric Report. AR 330-37. Dr. DeSilva noted that Plaintiff took prescription antidepressants and sleep medication and attended psychotherapy twice a month and medication follow-up visits once a month. AR 331. Plaintiff reported that she watched TV and read regularly, tired easily, socialized with neighbors and friends, helped with household chores, and taught animal care. AR 333. Upon examination, Dr. DeSilva assessed mild to moderate depression and anxiety. AR 332. Plaintiff exhibited psychomotor retardation, "slightly impaired" memory for recent events, and some impairment in concentration but was alert and oriented and demonstrated coherent speech, normal perception, and good memory for remote events. Id.

///

4

1    Dr. DeSilva diagnosed posttraumatic stress disorder ("PTSD"),

2   dysthymic disorder, and pain disorder. Id. She found Plaintiff's psychological

3   test results to be consistent with her distress, which had lessened with

4   treatment, and with severe anxiety and depression. AR 333-34. Dr. DeSilva

5   opined that Plaintiff had been "temporarily totally disabled from May of 2001

6   to February 18, 2003" but thereafter had become "permanent and stationary."[3]

7   AR 777. Dr. DeSilva recommended continued psychiatric treatment "through

8   the end of rehabilitation" from Plaintiff's workplace injury and as needed

9   thereafter. AR 335. She opined that Plaintiff could not return to her prior job

10  with the postal service because of fearfulness and reduced stress tolerance. AR

11  336. On a contemporaneous Work Function Impairment Form, Dr. DeSilva

12  indicated that Plaintiff had "very slight" and "slight" impairments in various

13  areas of workplace functioning because of anxiety, depression, fear of reinjury,

14  fatigue, and poor concentration. AR 780.

15    On December 26, 2006, consulting psychiatrist Romulado Rodriguez

16  performed a complete psychiatric evaluation of Plaintiff. AR 392-98. Plaintiff

17  reported that after the mailbox explosion, she had continued working for the

18  postal service on a limited basis and also cared for a ranch and its animals, but

19  she no longer was able to do either. AR 394. She could perform household

----

20    [3] A person who is "totally temporary disabled" is prevented by
21  workplace injury from earning her wages. See Herrera v. Workmen's Comp.
22  Appeals Bd., 71 Cal. 2d 254, 257 (1969) (noting that injured employee was
23  entitled to temporary disability for any period her industrial injury causes her
    to be unable to earn any income while recovering from the effects of her
24  injury); Gallo Glass Co. v. Workers' Comp. Appeals Bd., 78 Cal. Comp. Cases
25  375, 2013 WL 1233536, at *2 (Ct. App. Mar. 13, 2013) (same). A disability
    becomes "permanent" when an employee "has reached maximal medical
26  improvement, meaning his or her condition is well stabilized, and unlikely to
    change substantially in the next year with or without medical treatment." Cal.
27  Code Regs., tit. 8 § 10152.

28

chores and yardwork, cook, shop for groceries, and run errands. Id. She was able to manage her own hygiene, leave home alone, drive a car, and manage funds and bills. AR 394-95. She went for walks outside, watched TV, and attended victims-rights activities.[4]

Dr. Rodriguez noted Plaintiff's good eye and interpersonal contact, ability to volunteer information spontaneously, and apparent truthfulness and found no evidence of psychomotor retardation or attempts at manipulation. AR 395. He found Plaintiff to be coherent and her thought processes to be normal. Id. Her mood was euthymic and her affect full and animated. Id. Her speech, intellectual functioning, memory, fund of knowledge, concentration, and reasoning were normal. AR 395-96.

Dr. Rodriguez diagnosed PTSD and estimated Plaintiff's Global Assessment Functioning score to be 65.[5] AR 396-97. He opined that Plaintiff was "reasonably stable on her psychiatric medications." AR 397. He opined that she was able to carry out both simple and complex instructions and was only "[s]lightly limited" in her ability to interact with others; maintain concentration, persistence, and pace; deal with daily work activities and stressors; and perform work activities consistently and without additional supervision. AR 398.

/ / /

---

[4] Plaintiff's sister, the actress Sharon Tate, was murdered by followers of Charles Manson in 1969. See AR 393.

[5] A "GAF" score of 61 to 70 indicates either "[s]ome mild symptoms" such as "depressed mood and mild insomnia" or "some difficulty in social, occupational, or school functioning" but that the patient is "generally functioning pretty well [and] has some meaningful interpersonal relationships." See Diagnostic & Statistical Manual of Mental Disorders 34 (4th ed. 1994), available at: https://www.msu.edu/course/sw/840/stocks/pack/axisv.pdf.

### 2.   Analysis

The step-two inquiry is "a de minimis screening device to dispose of groundless claims." <u>Smolen v. Chater</u>, 80 F.3d 1273, 1290 (9th Cir. 1996). The claimant has the burden to show that she has one or more "severe" medically determinable impairments that can be expected to result in death or last for a continuous period of at least 12 months, as demonstrated by evidence in the form of signs, symptoms, or laboratory findings. <u>See</u> <u>Bowen v. Yuckert</u>, 482 U.S. 137, 146 n.5 (1987); §§ 404.1508, 404.1520(a)(4)(ii); <u>Ukolov v. Barnhart</u>, 420 F.3d 1002, 1004-05 (9th Cir. 2005). A medically determinable impairment is "severe" if it "significantly limits [her] physical or mental ability to do basic work activities." § 404.1520(c); <u>accord</u> § 404.1521(a). "An impairment or combination of impairments may be found not severe only if the evidence establishes a slight abnormality that has no more than a minimal effect on an individual's ability to work." <u>Webb v. Barnhart</u>, 433 F.3d 683, 686 (9th Cir. 2005) (citation and internal quotation marks omitted).

The ALJ found that Plaintiff's "medically determinable mental impairment of anxiety did not cause significant mental functional limitations for a period of 12 continuous months" and was therefore not severe. AR 14. Based on Plaintiff's reported activities and treatment notes, the ALJ found that she had minimal to mild limitations in completing activities of daily living, social functioning, and maintaining concentration, persistence, or pace and had suffered no extended periods of decompensation. AR 14-19; <u>see</u> 20 C.F.R. part 404, subpt. P, app. 1 § 12.00(C); <u>id.</u> § 404.1520a(c)(3).

Plaintiff contends that the ALJ erred in finding that she did not suffer a severe mental impairment from May 2001 to February 2003. JS at 3. Plaintiff points to Dr. DeSilva's March 6, 2003 finding that she was temporarily totally disabled during that period and contends that the ALJ failed to give clear and convincing reasons for discounting that finding. <u>Id.</u> at 4-5; <u>see</u> AR 334.

7

As an initial matter, whether Plaintiff suffered a severe mental impairment from 2001 to 2003 is of marginal relevance to her DIB claim. To qualify for DIB, Plaintiff was required to establish disability beginning before March 31, 2006, the last date upon which she was insured. See AR 290; Johnson v. Shalala, 60 F.3d 1428, 1432 (9th Cir.1995). Moreover, because Plaintiff filed her application in May 2006, she could recover benefits beginning no earlier than May 2005. See AR 265-76, 290; 20 C.F.R. § 404.621(a)(1) (noting that DIB applicant can recover benefits for up to 12 months before month of filing); Castanon v. Colvin, 2014 WL 1230908, at *1 n.4 (N.D. Cal. Mar. 21, 2014). Thus, Plaintiff had the burden of establishing that as of some date between May 2005 and March 2006, she had a mental impairment that prevented her from working for at least 12 consecutive months. See Webb v. Barnhart, 433 F.3d 683, 686 (9th Cir. 2005); Barnhart v. Walton, 535 U.S. 212, 217 (2002).

Although Plaintiff's mental disability status between May 2001 and February 2003 might have informed the ALJ's assessment of whether Plaintiff was mentally disabled during the relevant period, records that predate the relevant period by two to four years are of only limited relevance. See Fair v. Bowen, 885 F.2d 597, 600 (9th Cir. 1989). Even if Plaintiff did suffer a disabling mental impairment between 2001 and 2003, her delay in seeking DIB would have precluded any recovery for disability during that period. See 20 C.F.R. § 404.621(a)(1). Accordingly, even if the ALJ did err in determining that Plaintiff had no severe mental impairment from May 2001 to February 2003, any error would not have impacted his determination that Plaintiff was not entitled to DIB and was thus harmless. See Stout v. Comm'r, Soc. Sec. Admin., 454 F.3d 1050, 1055 (9th Cir. 2006) (noting that error is harmless when nonprejudicial to claimant or irrelevant to ultimate disability conclusion).

More importantly, Plaintiff does not contend that the ALJ erred in finding that she had no severe mental impairment during the relevant period of May 2005 to March 2006. Treatment notes from that period and assessments performed shortly before and after the relevant period support the ALJ's finding that Plaintiff's mental impairment "does not cause [her] more than minimal limitation in the ability to functionally perform basic work activities." AR 15. Dr. DeSilva opined that Plaintiff's mental impairment imposed only "slight" and "very slight" limitations upon her workplace functioning as of 2003, AR 780, apparently because she had improved with treatment, see, e.g., AR 335 (recommending post-rehabilitation psychiatric care as needed), and her treatment notes during the later, relevant period reflect consistent findings that Plaintiff's mental symptoms were improved and made stable by medication, see AR 18 (ALJ noting that Dr. DeSilva's finding of slight limitations was consistent with evidence of Plaintiff's "benign symptoms, which were eased with medications"); AR 667-76, 678-82 (Dr. DeSilva's treatment notes). Indeed, even earlier treatment notes indicate good response to medication. See, e.g., AR 686-87, 689, 691, 693, 695-705. Symptoms that can be managed with medication are not disabling. See Warre v. Comm'r of Soc. Sec. Admin., 439 F.3d 1001, 1006 (9th Cir. 2006) ("Impairments that can be controlled effectively with medication are not disabling for the purpose of determining eligibility for SSI benefits.").

Moreover, on December 26, 2006, several months after the relevant period, Dr. Rodriguez opined that Plaintiff suffered from PTSD but was only "slight[ly]" limited in various areas of workplace functioning. AR 19; see AR 398. And Plaintiff reported to both doctors relatively normal daily activities. See AR 333, 394-95. Plaintiff points to no findings from the relevant period contradicting these assessments or the relevant treatment notes.

///

Although Plaintiff contends that the ALJ "improperly dismissed" Dr. DeSilva's 2003 opinion in favor of Dr. Rodriguez's 2006 opinion, JS at 4-5, the ALJ in fact relied on both doctors' findings of no more than slight functional limitations in finding that Plaintiff did not have a severe mental impairment during the relevant period, see AR 18-19. Indeed, the ALJ emphasized that Dr. Rodriguez's opinion was "not inconsistent with that of the claimant's treating psychiatrist," that both the treating and examining psychiatrists' opinions were "essentially the same" as those of the state-agency physicians, and that all of these were "reasonable and supported by the record as a whole." AR 19; see AR 400, 408 (state-agency physician finding mental impairments not severe and only mild limitation in maintaining concentration, persistence, or pace). The ALJ properly credited Dr. DeSilva's opinion based on her specialty and long treatment relationship with Plaintiff and the consistency between her findings and the objective medical evidence of record. AR 18; see 20 C.F.R. § 404.1527(c)(2)(ii), (3)-(5); Orn v. Astrue, 495 F.3d 625, 633-34 (9th Cir. 2007). He properly credited Dr. Rodriguez's findings based on his specialty, his independent examination of Plaintiff, and the consistency between his findings and the objective medical evidence of record. AR 19; see 20 C.F.R. § 404.1527(c)(1), (4)-(5); Tonapetyan v. Halter, 242 F.3d 1144, 1149 (9th Cir. 2001) (holding that medical opinion based on independent examination itself constitutes substantial evidence). Notably, Dr. Rodriguez's opinion of Plaintiff's condition several months after the relevant period provides more insight into her condition from May 2005 to March 2006 than Dr. DeSilva's opinion, dated more than two years before the relevant period began.

Plaintiff is correct that the ALJ erred in discounting Dr. DeSilva's finding of a period of temporary total disability solely because it was based on workers'-compensation criteria, which differ from those used in Social

Security. AR 19; see AR 335-36; see Sinohui v. Astrue, No. 10-908, 2011 WL 1042333, at *2 (C.D. Cal. Mar. 18, 2011); Booth v. Barnhart, 181 F. Supp. 2d 1099, 1105 (C.D. Cal. 2002). As noted above, however, Dr. DeSilva opined that Plaintiff's temporary total disability ended in February 2003. Thus, any error was harmless. See Fair, 885 F.2d at 600; Stout, 454 F.3d at 1055.

Remand is not warranted on this basis.

**B.    The ALJ Had No Duty to Further Develop the Record**

Plaintiff further contends that the ALJ failed to adequately develop the record regarding Dr. DeSilva's March 2003 opinion. JS at 8-10. Specifically, Plaintiff contends that Dr. DeSilva's finding of only slight and very slight impairments in workplace functioning was inconsistent with her contemporaneous finding that Plaintiff's psychological testing showed severe anxiety and depression. JS at 8-9. Plaintiff notes that the medical expert, psychologist Raymond Moore, testified that he "d[id]n't know what to make of" Dr. DeSilva's notation that psychological test results were consistent with severe anxiety and depression and opinion that any mental impairments had only "slight" or "very slight" impact on Plaintiff's workplace function. AR 57-58; see AR 334, 338. Plaintiff thus contends that the ALJ had a duty to contact Dr. DeSilva to clarify this inconsistency.

The ALJ's duty to develop the record, however, is only triggered "when there is ambiguous evidence or when the record is inadequate to allow for proper evaluation of the evidence." Mayes v. Massanari, 276 F.3d 453, 459-60 (9th Cir. 2001). Contrary to Dr. Moore's testimony, Dr. DeSilva's report and work-function form did not create an inherent ambiguity. Although Dr. DeSilva noted that Plaintiff's test scores were consistent with distress and severe depression and anxiety, the doctor also noted an improvement in Plaintiff's distress level, only mild to moderate depression upon examination, a "proclivity to dramatize stress as an attention-getting device," that Plaintiff

managed her symptoms with psychotherapy and medication, that she reported relatively normal social activities and domestic function, and that upon completion of her workers'-compensation rehabilitation period, she should seek psychiatric treatment only as needed. AR 333-35. These findings were consistent with Dr. DeSilva's treatment notes during that period, see AR 686-87, 689, 691, 693, 695-705; with Dr. DeSilva's treatment notes during the later, relevant period, see AR 667-76, 678-82; and with the later opinions of Dr. Rodriguez and the state-agency physicians, see AR 397-98 (Dr. Rodriguez finding Plaintiff "reasonably stable on her psychiatric medications" and only "[s]lightly limited" in workplace functioning), AR 400, 408 (state-agency physician finding mental impairments not severe and only mild limitation in maintaining concentration, persistence, or pace). Plaintiff's daily activities also suggested no more than mild functional limitations. See AR 333, 394-95. Moreover, any conflict between Dr. DeSilva's report and her work-function form, both of which predated the relevant period by more than two years, did not make the record inadequate to allow for proper evaluation of the evidence of an impairment existing between May 2005 and March 2006.

Accordingly, the ALJ had no duty to develop the record with respect to Dr. DeSilva's March 2003 opinion of Plaintiff's mental-health impairment. Remand is not warranted on this basis.

## V.

## CONCLUSION

For the reasons stated above, the decision of the Social Security Commissioner is AFFIRMED and the action is DISMISSED with prejudice.

Dated: September 8, 2015

_____
DOUGLAS F. McCORMICK
United States Magistrate Judge

12